IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SCD RMA, LLC d/b/a RMA SALES CO., INC., )<br><br>Plaintiff, )<br><br>vs. )<br><br>FARSIGHTED ENTERPRISES, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; and DOE ENTITIES 1-10, )<br><br>Defendants. )<br>_____ )<br><br>FARSIGHTED ENTERPRISES, INC., )<br>          Counterclaimant, )<br><br>vs. )<br><br>SCD RMA, LLC d/b/a RMA SALES CO., )<br>          Counterclaim Defendant. )<br>_____ )<br><br>FARSIGHTED ENTERPRISES, INC. )<br>          Third-Party Plaintiff, )<br><br>vs. )  | CIV. NO. 07-00539 DAE-LEK |

JAMES FERNANDO GUARDIA,      )
JOHN DOES 1-10; JANE DOES 1-  )
10; DOE CORPORATIONS 1-10;    )
DOE ENTITIES 1-10; and DOES   )
GOVERNMENTAL UNITS 1-10.      )
                              )
                Third Party Defendants.  )
_____  )


ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing.  After reviewing Defendant's motion and the supporting and opposing memoranda, the Court DENIES Defendant's Motion.

BACKGROUND

RMA and Farsighted entered into a contract effective July 12, 2006, in which Farsighted agreed to create a die mould and produce vinyl window louvers for RMA.[1]  RMA had contracted separately with HAMCO, a window installation subcontractor who would install the louvers at Waimea Canyon School in Waimea, Kauai, and with another window installation contractor, who would install the louvers in five Oahu schools as part of a renovation project contracted by the State of Hawaii Department of Education.

_____

[1]Louvers are windows or blinds with horizontal slats that are angled to admit light and air but designed to keep out rain.

2

Farsighted manufactured the louvers based on a design submitted by James Fernando Guardia, an engineer with RMA.  Farsighted confirmed this design with its own CAD Shop drawing which converted the measurements used by Guardia into metric measurements for the purpose of off-shore manufacture.

Farsighted manufactured the vinyl louvers and RMA received them in three separate shipments on April 20, 2007, May 3, 2007, and July 23, 2007.  The louvers were subsequently delivered to HAMCO, who then cut and installed them at Waimea Canyon School.

Shortly after receipt of the first shipment of louvers, RMA discovered certain defects, including defective vinyl or no vinyl in some of the blades.  RMA informed Farsighted of these defects on May 25, 2007.  According to RMA, Farsighted gave verbal assurances that it would correct the defects in later shipments.  On July 26, 2007, HAMCO informed RMA that the weather strips on the louvers were detaching from the products from normal day-to-day use.  The next day, RMA faxed a copy of HAMCO's email to Farsighted and informed it that the problem with the louvers could result in financial loss and harm to RMA's business reputation.  On July 31, 2007, HAMCO provided RMA with a detailed description of the problems with the louvers.  On August 8, 2007, RMA sent a letter to Farsighted seeking remedial measures, including replacement of all louver

blades, establishment of a warranty trust fund to cover expenses relating to replacement installation, written assurances as to the quality of the other louvers, and a time-line as to the manufacture of new louvers.

Over the course of the next several months, RMA and Farsighted quarreled over the defect in the louvers and communicated often about their respective positions. Farsighted claimed that it produced the vinyl louvers in compliance with the design submitted by Guardia. RMA, relying on a site report conducted by Phil Haisley of Architectural Diagnostics, Ltd., argued that the defect was a failure of manufacturing and materials used by Farsighted.

After the State of Hawaii sent notice to RMA that it would have to replace the louvers at no cost to the schools, RMA decided to obtain replacement louvers from a different supplier. RMA filed suit on October 3, 2007 against Farsighted in the Circuit Court of the First Circuit, State of Hawaii, alleging breaches of contractual duties and implied warranties. Farsighted removed the case to this Court on October 26, 2007.

Finally, on November 7, 2007, after filing of the complaint and removal to federal court, RMA sent Farsighted a letter in which RMA specifically revoked its acceptance of the louvers and informed Farsighted that it sought costs associated with the purchase of replacement louvers and re-installation.

4

On November 11, 2008, Farsighted filed the instant Motion for Summary Judgment.  (Doc. # 48.)  Third party defendant James Fernando Guardia filed a statement of no position to the motion on December 3, 2008.  (Doc. # 59.)  On December 4, 2008, RMA filed its opposition (Doc. # 62) to which Farsighted replied on December 11, 2008 (Doc. # 66).

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial -- usually, but not always, the defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

　　　　Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  Porter,

419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties.").  "[A]t least some 'significant probative evidence'" must be

produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine issue of material fact." <u>Addisu</u>, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  <u>Porter</u>, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  <u>Id.</u>  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

<u>DISCUSSION</u>

This case is governed by the Uniform Commercial Code ("UCC"), which was adopted by Hawaii in 1965 and codified in Chapter 490 of the Hawaii Revised Statutes.  <u>See</u> Haw. Rev. Stat. § 490:10-101; Haw. Rev. Stat §§ 490:1-11, et seq.  Very little State case law exists interpreting the various provisions of the Hawaii UCC.  Accordingly, this Court looks to established secondary authorities and out-of-state court decisions as persuasive -- though not binding -- authority.

7

Farsighted argues they are entitled to summary judgment for a number of reasons: (1) the vinyl louvers provided to RMA conformed to the requirements of the contract between the parties; (2) RMA accepted the louvers; (3) RMA failed to properly reject the louvers; (4) RMA did not properly revoke its acceptance of the louvers because the value of the louvers was not substantially impaired by any alleged defect and because RMA substantially changed the condition of the window louvers; and (5) RMA frustrated Farsighted's right to cure any alleged defect.

RMA responds that, while the louvers may have been manufactured according to the design drawings of Guardia, Farsighted failed to abide by the material specifications provided by RMA and contemplated by the contract. According to RMA, the louvers were therefore nonconforming.  Notably, RMA does not address Farsighted's contention that RMA properly accepted the louvers and, therefore, did not reject them under the provisions of the UCC.  RMA does, however, contend that it properly revoked its acceptance of the louvers by making timely notice of the louvers' nonconformity.  Finally, RMA argues that even if this Court finds revocation improper, they can maintain breach of warranty claims against Farsighted.

8

Hawaii UCC law provides that:

(1) The buyer may revoke his acceptance of a lot or commercial units whose nonconformity substantially impairs its value to him if he has accepted it

(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

Haw. Rev. Stat. § 490:2-608.  Therefore, generally, revocation of acceptance requires the following elements: (1) the goods must be nonconforming; (2) the nonconformity must substantially impair the value of the goods to the buyer; (3) the buyer must have accepted the goods on the reasonable assumption that the nonconformity would be cured; (4) the buyer must notify the seller of his revocation; (5) revocation must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in the condition of the goods which is not caused by their own defects; and

9

(6) the buyer must take reasonable care of the goods after revocation.  <u>See</u> 3

Williston on Sales § 25-11 (5th ed. 1996).

As a threshold matter, thus, the goods must be nonconforming before

a buyer can properly revoke his acceptance.  Goods are "conforming" when they

are in accordance with the obligations under the contract.  Haw. Rev. Stat. §

490:2-106.

In this case, Farsighted's obligations under the contract are a matter of

serious dispute.  Namely, the parties dispute whether the contract contemplates

manufacture of the vinyl louvers according to design specifications that RMA

claims were provided to Farsighted.  The specifications called for the vinyl louvers

to "have an integral flexible vinyl weather strip at each interlocking groove."  (Pl.'s

Ex. C.)  According to RMA, the term "integral" as used in vinyl extrusion means

that the vinyl for the louver and the vinyl for the flexible weather strip are

simultaneously processed through the die or mould so that the two components

become one complete vinyl unit.  The specifications also described the manner in

which to attach the weather strip to the louver.  The actual louvers produced by

Farsighted, however, did not follow these specifications which, RMA argues, led

to their failure once installed.  Rather than co-extruding the weather strip and the

louvers, Farsighted used a heat compression method to bond the two separate components together.

Farsighted contends that the contract is silent as to these specifications and therefore it is under no obligation to manufacture the louvers according to these specifications. RMA argues that the contract is silent as to several important aspects of the louver product, indicating it is not the entire and exclusive agreement of the parties but rather it contemplates supplementation.

Contract terms should be interpreted according to their plain, ordinary, and accepted meaning. Found. Int'l, Inc. v. E.T. Ige Constr., Inc., 78 P.3d 23, 30-31 (Haw. 2003). Under Hawaii law, a contract must be reviewed in its entirety and the court's principle objective is to ascertain and effectuate the intent of the parties as manifested by the entire contract. Brown v. KFC Nat'l Mgmt. Co., 921 P.2d 146, 160 (Haw. 1996) (citing Univ. of Hawaii Prof'l Assembly v. Univ. of Hawaii, 659 P.2d 720, 724 (Haw. 1983)). If there is doubt, the interpretation which most reasonably reflects the intent of the parties must be chosen. Id. Where the language of a contract is ambiguous, so that there is some doubt as to the intent of the parties, that intent is a question of fact. Bishop Trust Co., Ltd. v. Cent. Union Church of Honolulu, 656 P.2d 1353, 1356 (Haw. Ct. App. 1983) (citing DiTullio v. Hawaiian Ins. & Guar. Co., Ltd., 616 P.2d 221 (Haw. Ct. App. 1980)).

When the contract language is ambiguous, parol evidence of the parties' intent may

be considered.  <u>Amfac, Inc. v. Waikiki Beachcomber Inv. Co.</u>, 839 P.2d 10, 31

(Haw. 1992); Haw. Rev. Stat. § 490:2-202.

The contract at issue in this case is a sales contract, which focuses

more on the price and quantity of louvers than their design and manufacture.

(Def.'s Ex. B.)  In fact, the contract does not specifically name the goods being

manufactured (i.e. vinyl louvers), much less provide detailed requirements for their

design and composition.  The entirety of the language relating to the creation of the

louvers is "[RMA] agreed to pay US$4,000.00 for [Farsighted] to open one Die

(Mould) for [RMA]."  (<u>Id.</u>)  The contract is, therefore, clearly silent as to the major

issues in dispute in this case.

However, there is no evidence the contract was intended to be a

complete and exclusive representation of the agreement between the parties.  In the

first instance, the contract lacks an integration clause.  This indicates the parties

may have contemplated supplementation of specific terms.  Secondly, both parties

understood the contract to require Farsighted to manufacture vinyl louvers, despite

the contract's silence as to the actual product.  (<u>See</u> Def.'s Mot. at 2; Pl.'s Opp'n at

3.)  Moreover, both parties agree that they intended Farsighted to manufacture the

louvers according to a design drawing created by Guardia, despite the contract's

silence as to this issue.  (Id.)  The question remains, therefore, whether the parties intended for Farsighted to manufacture the louvers according to "specifications" provided by RMA.

This Court finds that a genuine issue of material fact exists as to whether the parties intended Farsighted to be bound by the specifications in the same way they both intended it to be bound by the design drawing.  While the contract itself is silent as to the inclusion of specifications, RMA has produced several pieces of evidence that indicate Farsighted might have been aware of the specifications and, for whatever reason, chose to ignore them.

For one, RMA faxed Farsighted a copy of the specifications and told them "we need to make sure we are in compliance."  (Pl.'s Ex. F.)  Although this does not necessarily bind Farsighted, it indicates Farsighted was aware of the specifications prior to manufacture.  Second, the fact that Farsighted tested the louvers for fire retardant levels as required by the specifications may indicate that Farsighted understood it was bound by those specifications.  (Pl.'s Ex. D.)

In light of the above, this Court finds that a genuine issue of material fact exists as to whether the parties intended Farsighted to be bound by the specifications and, therefore, whether the vinyl louvers were, in fact, nonconforming.

Even assuming the parties intended Farsighted to be bound by the specifications and the louvers were nonconforming, several issues of material fact remain as to other elements of revocation of acceptance.  This Court will briefly review these issues.

First, revocation of acceptance is available to the buyer only if the nonconformity of the goods results in the substantial impairment of their value to the buyer.  Haw. Rev. Stat. § 490:2-608(1); 3 Williston on Sales § 25-15.  What is a substantial impairment is a question of fact, the answer to which depends on the circumstances of each case.  3 Williston on Sales § 25-15 (and cases cited therein). Some courts employ an objective test for substantial impairment, others employ a subjective test, and some employ a two-pronged approach testing both objective and subjective impairment.  Id.

Under any approach, genuine issues of material fact exist as to the degree of impairment caused by the alleged nonconformity.  Farsighted, citing the report of their expert, contends that the weather strip seals on the window louvers that were the basis for RMA's complaints were not necessary for the Waimea Canyon School.  Therefore, any defect in the weather stripping would not substantially impair the value of the louvers to RMA.

14

RMA, on the other hand, argues the value of the louvers was substantially impaired when the State of Hawaii, in response to the weather strip peeling, rejected the louvers and demanded RMA replace the louvers at no cost to the State.[2]  Because the State of Hawaii specifically refused use of the allegedly defective louvers, RMA contends they effectively had no value at all.  Certainly, issues of fact remain as to whether the value of the louvers was impaired and, if so, to what degree.

Second, there remain questions of fact as to when revocation actually occurred and whether that revocation was timely.  Although Farsighted did not specifically argue the issue of timeliness of revocation in its moving papers, they did argue RMA frustrated their right to cure the alleged defect before revocation. Revocation must occur when a reasonable time after the buyer discovers or should have discovered the defect.  Haw. Rev. Stat. § 490:2-608(2).  Whether a buyer revokes within a reasonable time is a question of fact for the jury, and the UCC indicates that what is a reasonable time depends on the "nature, purpose, and

---

[2]Farsighted contends that the State of Hawaii never specifically rejected the louvers in their entirety, but merely rejected the weather stripping on certain louvers.  (See Pl.'s Ex. R) ("We are requiring the weatherstrips to be replaced at no additional cost to the school.").  They argue, thus, that RMA could have simply replaced the weather stripping on the louvers that had experienced peeling rather than replacing all of the louvers themselves.  This merely demonstrates additional evidence that the issue of substantial impairment remains in dispute.

15

circumstances of the action." Haw. Rev. Stat. § 490:1-205(a).  However, the buyer

is generally given time after discovery of the defect to attempt to have the seller

cure the defect.  See, e.g., Sierra Diesel Injection Serv. v. Burroughs Corp., 651 F.

Supp. 1371, 1378 (D. Nev. 1987).

        Notably, in this case, Farsighted argues that RMA did not allow it to

properly cure the alleged defect.  Farsighted indicates that it offered to provide

replacement louvers with a revised design to correct the problems with weather

stripping.  (Def.'s Ex. K)[3]  This offer, however, was only made after filing of the

instant lawsuit, and Farsighted insisted RMA would be responsible for the labor

costs involved in the installation of the replacement louvers.  RMA also argues that

it specifically delayed giving notice of official revocation in order to provide

Farsighted an opportunity to remedy the problems and cure the defect.  Once again,

it is clear a genuine issue of material fact exists as to whether RMA's revocation

was within a reasonable time and whether Farsighted was given a legitimate

opportunity to cure.

---

        [3]This Court notes that Exhibit K is a letter from Farsighted to RMA, faxed
on October 8, 2007, that specifically states it is an offer of settlement.  Generally,
offers of settlement are not admissible under Federal Rules of Evidence 408(a)
when used to prove liability.  This Court, however, may consider the document in
order to establish whether Farsighted wished to cure the defect and at what time it
sought cure.  See Fed. R. Ev. 408(b).

Finally, revocation must be accomplished prior to any substantial change in condition of the goods.  Haw. Rev. Stat. § 490:2-608(2).  This rule reflects the UCC's policy that the allegedly defective goods are to be restored to the seller in a reasonable condition.  <u>See</u> Comments to Haw. Rev. Stat. § 490:2-608(2).  It is unclear from case law, however, whether this rule applies in situations in which the buyer only discovers the alleged defect during processing of the goods.  In cases such as this, where the alleged nonconformity cannot be discovered merely by looking at the louver but only after cutting and installation into a window, the question is whether RMA may still be able to revoke acceptance even though it admittedly altered the original product manufactured and delivered by Farsighted.

Farsighted cites to <u>Trinkle v. Schumacher Co.</u>, 301 N.W.2d 255 (Wis. App. 1980), for its contention that RMA could not revoke its acceptance once HAMCO had cut the louvers and installed them into Waimea Canyon School.  In <u>Trinkle</u>, the plaintiff ordered fabric from the defendant for use in making Roman shades.  <u>Id.</u> at 256.  After delivery and during processing of the fabric into Roman shades, it was discovered that the vinyl backing was improperly applied to the fabric and therefore could not be used.  <u>Id.</u>  According to the court, the condition was not determinable until the fabric had actually been processed into the Roman

shades and cut by the plaintiff.  Id.  The court, in dicta, stated that the plaintiff

could not effectively revoke acceptance because "the evidence is uncontroverted

that the revocation of acceptance occurred after the fabric was cut which was a

'substantial change in condition of the goods which is not caused by their own

defects.'" Id. at 258 (citing the Wisconsin adoption of the UCC).

      Later cases, however, have questioned this logic.  In Lackawanna

Leather Co. v. Martin & Stewart, Ltd., 730 F.2d 1197, 1202-1203 (8th Cir. 1984),

a manufacturer of upholstery leather purchased cattle hides from a hide supplier.

After a routine visual inspection revealed no obvious defects, the plaintiff began

processing the hides by chemically removing salt and hair and "splitting" them.  Id.

at 1199.  The splitting process revealed grain and beetle damage, which rendered

them unusable.  Id.

      The Eighth Circuit, weighing several factors, held that the district

judge was justified in submitting the plaintiff's revocation of acceptance theory to

the jury.  Id. at 1202.  First, evidence was offered which showed that only by

processing the hides could the beetle damage be discovered.  Id.  Secondly, the

defendants sold the hides knowing that the processing was necessary to make the

hides commercially usable to the plaintiff.  Id.  Given those factors, the Eighth

Circuit concluded that no substantial change in condition occurs when the buyer

18

attempts to conform the goods to their bargained-for condition.  Id. at 1203 (citing

Am. Research Bureau v. E-Systems, Inc., 663 F.2d 189, 197-98 (D.C. Cir. 1980)

(applying Maryland law)).

The Fifth Circuit has also echoed the policies of Lackawanna.  In

Deere & Co. v. Johnson, 271 F.3d 613, 620 (5th Cir. 2001), the court noted that in

almost all cases involving a dispute over a "substantial change" the buyer engaged

in some activity which altered the goods.  The court held, however, that "simple

depreciation alone" usually does not constitute a substantial change in the

condition of the good.  Id.  This policy is consistent with the doctrine of revocation

of acceptance because the doctrine is meant to remedy a situation in which a latent

defect arises.  Id.  If simple depreciation of the nonconforming good was enough to

nullify the revocation of acceptance, the court explained, a buyer might never be

able to revoke acceptance of a good with a latent defect.  Id.

For these reasons, this Court agrees that HAMCO's cutting and

installation of the louvers did not substantially change the louvers for the purposes

of revocation.  As in Lackawanna, if the defect in the weather stripping could not

be revealed upon mere visual inspection, RMA may not be barred from revoking

acceptance simply because they cut and installed the louvers.  Moreover, it appears

Farsighted sold the louvers to RMA knowing that cutting and installation were

necessary for the louvers to be commercially usable.  It is for the jury to decide whether, in fact, the defect was latent and undiscoverable by RMA upon simple inspection and whether RMA effectively revoked.  This Court will not bar RMA's claims as a matter of law simply because they altered the condition of the vinyl louvers in the course of installation.

Accordingly, as there remain several genuine issues of material fact as to revocation of acceptance, this Court DENIES Farsighted's Motion for Summary Judgment.[4]

/

/

/

/

/

---

[4]Farsighted did not move in its original motion for summary judgment on any of RMA's claims for breaches of implied warranties, such as the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.  Therefore, even though RMA commented on these issues in their opposition and Farsighted replied to RMA's opposition, this Court will not address the merits of those claims.

## CONCLUSION

For the reasons stated above, the Court DENIES Farsighted's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 23, 2008.



_____
David Alan Ezra
United States District Judge

SCD RMA, LLC v. Farsighted Enterprises, Inc., CV No. 07-00539 DAE-LEK;
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT